Thank you, your honor. Good morning, your honors. My name is Michael Donahoe. Back again today. Welcome back. Glad to see you again. Pleased to be here this morning. We bring to the court today, I think, an interesting issue, a claim under 4241. I must confess that although I've been practicing law for actually quite a long time, I'm sure not as long as your honors, but I just want to say at the onset that I've always sort of been confused by these statutes. Yeah, right. Now, your honors know, and I just want to give a quick reprise of what happened here. Mr. Kolesar was charged in ordinary fashion with a gun crime. He displayed symptoms of mental illness. The defender that appeared with him brought that to the court's attention, and that set the competency process in motion. He was first examined here in Seattle. There was a competency hearing. He was deemed to be incompetent. Medication regimen was set about trying to get him back. He then went to Springfield. We had a second competency hearing, and he was determined to be incompetent. Now, that last hearing is important. It occurred before the Honorable Judge Lynch. He's a magistrate judge. Judge Molloy had assigned the matter to him. There were no objections by the government. Judge Molloy studiously reviewed the record, entered an order, and determined him to be incompetent. What are you appealing exactly? I'm trying to make the point, your honor, that under Sahar, there should be some kind of preliminary process when we reach that point that I just ended at, and that there should be a query by the district court in jurisdiction in the domicile of the defendant. What are we going to do here? 4241 in the last pair. I'm just trying to figure out which order you're appealing. I actually appealed the first order, the June order. Okay. In the meanwhile, Judge Molloy set a hearing, which I thought, based on his original order, he was going to do. I will confess I didn't have any qualms when Judge Molloy entered his first order, said that the individual, Mr. Colestar, was incompetent, and that he needed some more data on the dangerousness of the place. He was committed to the custody of the attorney general. He was. To conduct a psychiatric evaluation. He was. And that was done. And that got done. In Missouri. That started immediately, and if you could just see me sit at my desk, I get that order. I read it, and I say, well, that's okay. I intuitively say that's okay. So why did you appeal it? Because I determined within the time for notice of appeal that that was inappropriate. I changed my mind. I thought, and he was, I did check on this because I thought your honors might ask. He was not gone from the district during the time, the notice of appeal time. I want to state that. But now, isn't it moving? So he was still in the district. I probably, go ahead, Your Honor. I'm sorry. That's okay. Go ahead. Finish your answer. I probably, the reason I checked on that point, I thought your honors might ask, wasn't there something that could have been done to keep him in the district to raise the point about whether the state could take care and custody of him? Because that's the point that I'm trying to get to. That's my essential point here today. Well, what I wanted to ask you is if you appealed the June order and the dangerousness determination has been conducted, why doesn't that move the appeal? Because it doesn't resolve my point. And in any case, there's been no finding to date at the time of this hearing today. Which point is it that has not been resolved? The point has not been resolved. Are there state facilities available to take care and custody of this defendant? Can't that point be resolved in the District of Missouri after that court rules? And apparently it hasn't ruled yet. It has not ruled yet. When it does rule, can't you then challenge what you're seeking to prove here? Well, I don't, the short answer is yes. But the follow-up or the additional information is that it's unnecessary, that we could avoid this entire process. I'd like the court to bear in mind that some of this is expensive. He leaves the district. He's separated from me. I am his counsel. They have to start an entirely new action in Missouri. I was under the impression that the man was leaving the district for the express purpose of getting the dangerousness evaluation and coming back. That is the usual protocol. But we did a little improvisation here, and Judge Malloy issued the second order that Judge Robinson gets to and says, I don't have any jurisdiction anymore. I'm finished with the case. Now, I have his criminal matter pending in my district. It's not resolved. I do not know what's going to happen to him. And I think there's serious implications to that, that he's exposed to a whole new regimen. The United States government is not in the business of committing people. And as a point of information, I would tell the court that Mr. Colasaur is on state paper until 2087. And it is highly likely that if at the beginning of this process we had looked at that, the state matter would have been resolved. I don't know the jargon. On state paper, what's that mean? He's on a suspended or probationary type sentence. Okay. And are you his lawyer in the dangerousness hearing in Missouri? I am not. So there's somebody else representing him there. Correct. And I was not made aware of that. I was not put on a list served. I was not. I found that out in the course of working this case. That came as a complete surprise to me that he had been, that petition had been filed by the United States there, that those papers had been sent apparently to Montana, those queries had been sent. And there has been a hearing in Missouri. I believe there has been a hearing. I believe there has been no resolution. I further understand from speaking to my colleague, a colleague in Missouri, that that office, the federal defender, apparently picked up and made the same arguments, that there's been insufficient showing on this state issue. And back to Sahar, that's this Court's rule in Sahar. And I think that the statutory apparatus that we have in front of us here, if the Court could take a look at the language of 4241 at the very end and it says when the person is incompetent and so on, and that's a paraphrase, the defendant is subject to the provisions of 4246. Is subject to. And there are certain requirements that go into him being committed under 4246. The certificate has to be filed. But that doesn't mean that Judge Malloy in this situation, in this context, or any judge would be limited in looking into or putting out a query and say, I want counsel to figure out, what are the state resources available for this individual? Is he on state paper? Will the state be able to take care and custody of him? And I think that that needs to happen first. I think Sahar says that in clear terms and that that's what should have happened here. Thank you, Your Honor. Okay. I'd like to reserve a couple minutes. Yeah, you've got some time. May it please the Court. Kurt Alme, representing the United States. If this Court finds that it has jurisdiction over the two orders that have been appealed from in this case, we'd ask you to affirm the Court's June 8th order on the grounds of Godinez-Ortiz. So is it your understanding that both orders were appealed? Your Honor, no. It was our understanding that only the June 8th order was properly appealed and only that issue raised in that order was briefed by the government. Godinez-Ortiz is the case, Your Honors, that we believe controls and that demonstrates that what the Court did on June 8th was correct. What counsel is essentially arguing, as I understand it … Are you going to the merits here? Yes, I am. You're agreeing that this Court has jurisdiction? I'm not, Your Honor. Then why are you talking about the merits? Well, I wanted to go to the merits first, Your Honor, because that hadn't been discussed as thoroughly, and I think that it does certainly control the case if there is jurisdiction. But I can discuss jurisdiction first if you prefer. Well, if there's no jurisdiction, that ends it then. We don't believe there is jurisdiction, Your Honors. As to the August 12th order, where Judge Molloy vacated the dangerousness hearing that he had set the day before, we argue this Court doesn't have jurisdiction under United States v. ONIC. Well, if it wasn't appealed, why are we even discussing it? And that's the second grounds, Your Honor, as to why there is no jurisdiction to decide the defendant's appeal of that order because it wasn't properly raised under Federal Appellate Procedure 3C. And since it wasn't and the government was prejudiced and wasn't able to brief it in its response, we would ask that the Court find that it does not have jurisdiction over that Court's order. As an alternative grounds as to why this Court doesn't have jurisdiction over that order is United States v. ONIC. The facts in the two cases are extremely similar. There's no final judgment in this case because we don't have a final 4246 hearing. And the collateral order exception doesn't apply for the same reasons it didn't apply in ONIC, and that is because there's been a dangerousness hearing in Missouri and there will ultimately be a dangerousness order, that issue can be properly raised on appeal in the 8th Circuit. But in ONIC, there had not been a dangerousness hearing. So isn't that a little different than the circumstance we have here where there has already been one conducted? And I think that makes, in this case, even more compelling that this Court doesn't have jurisdiction because there's even more certainty that the Court in Missouri is going to rule and there will be an order then that can be appealed. As to the June 8th order. That was the finality order in ONIC. The reason why there was no jurisdiction was because the order was not final. And here we do have a final order. I would argue, Your Honor, that the August 12th order is not final. As I understand the reading in ONIC, there is no final order until we get the final disposition of the 4246 hearing, and that won't occur until the Missouri Court rules. I understand that order is pending, as the hearing was already held last October. As to the June 8th order, which Defense Counsel is arguing that that order was improper because the District Court didn't first make a determination about state custody and care provisions in Montana before making the referral to Missouri, there's no jurisdiction in that case either, also under ONIC, but also under Godinez-Ortiz. When you look at Godinez-Ortiz, they were looking at almost the precise issue, and in that case they found that this Court did have jurisdiction over the order transferring the defendant in that case to the Federal Medical Center because there had been no order set in Missouri. That's how they distinguished ONIC. Well, why isn't it a collateral order that is final and now has consequences and can be looked at under the collateral order doctrine? And under the collateral order doctrine, Your Honor, again, I think that the way in Godinez-Ortiz that this Court explained that the collateral order doctrine applied in that case was because the Missouri Court hadn't set a hearing. In this case, the Court has set a hearing, so the question about state custody and care can be reviewed, can be handled by the Missouri Court at that time, and it can also, under the Sahara case cited by the defendant, the efforts of the Attorney General to determine the state placement for the defendant will also be reviewable at that time.  Your Honor, Godinez-Ortiz makes clear that what the district court did here was entirely appropriate. Or it's moot because the dangerousness hearing has been held already. That seems to me to be the more appropriate analysis because that's what he was challenging. He was challenging whether or not the dangerousness evaluation should be rendered, should have been done, right, after he changed his mind? As to the June 8th order, that's correct. And so it's been done already, so what is there to review? Well, I think you're right, Your Honor. The dangerousness hearing has been heard. In that regard, the matter is going forward in Missouri, and it is moot. Not to speak for defense counsel, I think they would say that no final order or no order has been entered yet in Missouri. Because the Missouri? Has not yet ruled. But for the finite issue of whether or not the dangerousness evaluation should take place, that order is final and it's been effectuated. Right, they have had the dangerousness hearing, and he has been transported to Springfield and they followed the proper procedure. But again, this case is really on all fours with what happened in Godinez-Ortiz. In that case and in this case, the defendant was sent to Springfield under a 4241D proceeding. He came back to our district, and there the court determined he was competent to proceed and that additional time wouldn't necessarily render him competent. So then 4246 applies. But what happened here, the gap in the statute, is when he was in Springfield, the director of the Springfield facility did not issue the certificate of dangerousness. So we have him back in Montana with no certificate. Under 4246A, you can't initiate the proceeding without a certificate. How can the director initiate a certificate if he's in Montana? That was the precise question put to this court in Godinez-Ortiz. And what this court said is, under 4246, the court in Montana, or in California in that case, has the authority to make a temporary commitment back to the federal medical center to allow the director to determine whether a certificate should issue. And the court said it had jurisdiction, though. In that case it did, but again, in Godinez-Ortiz, they hadn't set a dangerousness hearing in Missouri at the time that the court ruled, and that's how it was established. But the specific issue was whether or not the dangerousness hearing could be ordered, just as the issue is here. That was the issue, whether or not the dangerousness hearing could be ordered by the court. In Godinez-Ortiz, that's correct. Right, right. And the court said it had jurisdiction over that issue. Without looking at whether or not a hearing had taken place in Missouri, I mean in the other jurisdiction, right? No, Your Honor, I think actually it did consider ONIC and consider, and in the third prong of the collateral order exception, it did consider whether a hearing had been scheduled in Missouri. It found that it hadn't, and that's how it distinguished ONIC and found jurisdiction under the collateral order exception. So we'd argue since that fact doesn't occur here, in our situation it's more like ONIC, there is no jurisdiction. But if you do find that there is jurisdiction, then the court did properly follow Godinez-Ortiz, temporarily commit Mr. Colazar to Springfield, and there the director did exactly what he was supposed to do. He made a determination if the state of Montana would take him. He made a determination of dangerousness. He issued a certificate. The U.S. Attorney's Office in the Western District of Missouri filed the petition under 4246. The court held its hearing and now awaiting its ruling. Do you have Godinez before you, the case? I do. Show me the language where you think the jurisdictional issue is different than it is in this case. What I was referring to, Your Honor, is on page 1031. There's a paragraph that starts and it's talking about 1028, just before 1029. The court says, however, the facts in ONIC are distinguishable. In ONIC, while the California District Court refused to hold a dangerousness hearing, the District Court for the Western District of Missouri, where the defendant was being held, had already set a date for the dangerousness hearing. Right. But it goes on in the next paragraph and says, in contrast, in the instant case, the District Court has neither refused to schedule nor schedule a dangerousness hearing, nor is a dangerousness hearing pending in another court. So what does that mean? I think what the court in Godinez-Ortiz was saying there is because we don't have a hearing scheduled somewhere else, we're not sure that this will be reviewed, so we are going to find jurisdiction. In this case, our case, like ONIC, the Missouri court has scheduled a hearing. We are going to have an order. It will be reviewable. Therefore, the collateral order exception doesn't apply. It scheduled a hearing and held a hearing, didn't it? Yes, even one step further than in ONIC, than what had occurred in the ONIC case. I'm really confused because it says on 1029, if the director at the federal facility does not issue a dangerousness certificate, a dangerousness hearing cannot be held and no opportunity for appeal will arise, thus making the order effectively unreviewable. And, Your Honor. How does that play here? What would be different in our case is in this case the director at Springfield has issued the certificate. They have had the hearing, and now the court in the Western District will rule. And so there will be a reviewable order. The problem here is the district court in that case had not made an order about the dangerousness hearing. In this case, it did, in the June order. It did refer him to Missouri for a dangerousness exam. But in Godinez, there was no such order. No, there was. They did. They did transfer them. Yes, there was. We're on all fours with Godinez-Ortiz on that issue. I thought it says in the instant case, the district court has neither refused to schedule nor scheduled a dangerousness hearing. The court in Missouri had not yet. That's correct. But the court in California had temporarily committed the defendant in that case to Springfield, to Missouri, to allow that process to occur. I'll look at that again. And I apologize. I'm over my time. We'd ask that you affirm. We find that there's no jurisdiction. The alternative, you find jurisdiction over either order that you affirm. Okay. No apologies necessary. We took you over. Mr. Donahoe? I'll be brief here. The word I want to seize on here, and it was used several times by Mr. Elmey, is temporary. I think we can't lose sight of the fact that judgmentalized order was a temporary commitment for a specific purpose, and it ripened into taking the case to a completely different district that is not the individual's domicile. That's the focus of the problem here. I understand the jurisdictional concerns, but in the supplemental briefing, the court can see that so long as the June 8th order was appropriately appealed, and nobody denies that that wasn't, I don't think, the subsequent rule by Judge Malloy does give a certain indication that the case is final, and it convinces the court in no uncertain terms that the Montana District Court has nothing further to do with this particular issue. So in that sense, it's final, and the original notice of appeal covers both orders. I think the 28J letter that followed the supplemental briefing clearly indicates that. So I think this Court's jurisdiction is sound on that point, and it could come in and address and focus on the point that there needs to be some query on a front-end basis by the District Court, where do we stand with this individual, does he have any state matters pending, anything that needs to be resolved on that score. This, I submit, would be essentially resolved once that query was taken into account and answered. Thank you. Thank both of you for your confusing area and nice arguments. United States v. Colasar is now submitted for decision.
judges: Alarcon, Fletcher W. , Rawlinson